# United States Bankruptcy Court
### District of New Hampshire

In re  **Derry & Webster, LLC**　　　　　　　　　　　　　　　　Case No.　**13-12432**
　　　　　　　　　　　　　　　　Debtor(s)　　　　　　　　　　Chapter　**11**

## Derry & Webster, LLC'S  DISCLOSURE STATEMENT, DATED OCTOBER 1, 2013

### I.  INTRODUCTION

　　　　This is the disclosure statement (the "Disclosure Statement") in the chapter11 case of **Derry & Webster, LLC** (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the **Derry & Webster, LLC's Plan of Reorganization, Dated October 1, 2013** (the "Plan"). *Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

　　　　The proposed distributions under the Plan are discussed at pages 4-7 of this Disclosure Statement.  The Plan calls for continuous adequate protection payments to the First Mortgage Secured Creditor in the amount of the net rents collected on a monthly basis.  The second mortgage held by the same first mortgage creditor will receive a nominal adequate protection payment.  Both the first and second mortgages will be settled in full at the end of the plan. General unsecured creditors are classified in Class 4, and will receive a distribution of 10% of their allowed claims, to be distributed from additional contributions of the owner.

　　**Purpose of This Document**

　　　　This Disclosure Statement describes:

　　The Debtor and significant events during the bankruptcy case,
　　How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
　　Who can vote on or object to the Plan,
　　What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
　　Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
　　The effect of confirmation of the Plan.

　　　　Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### II.　BACKGROUND

　　**A.　Description and History of the Debtor's Business**

　　　The Debtor is a Limited Liability Company.   Since February 1, 2003, the Debtor has been in the business of developing and managing the realty located at 187 Webster St, Hudson, New Hampshire.  The Debtor acquired the property because it was in the business of developing and managing real estate into commercial operations and residential subdivisions.  This particular project was initiated on the basis of funds available from seller financing, and improvements were made through other sources controlled or owned by the members.  Until this filing, the payments to the secured creditor were being made out of the proceeds of the rental of residential and commercial units within the subdivision.

　　**B.　Insiders of the Debtor**

　　　The members of the Debtor are Vatche Manoukian (90%) and Linda Haytayan, (10%) members, with Vatche Manoukian as the named managing member.  Neither member has ever received any compensation from the Debtor.  In fact, both members have contributed substantial additional capital to rehabilitate the subdivision improvements so that there would be an income produced from the property. Linda Haytayan is presently a chapter 11 debtor in case no. 13-10697.

### C.    Management of the Debtor Before and During the Bankruptcy

During the five years prior to the date on which the bankruptcy petition was filed, the managing member in control of the Debtor (the "Manager") was Vatche Manoukian.  He has 20+ years managing commercial and residential units as well as extensive experience in the construction and development of subdivisions, both commercial and residential.  He is the managing member of 43 other entities that own or develop real estate.  He has been the Managing member during the Debtor's chapter 11 case.  After the confirmation of the plan, he will continue to be the managing member of the Debtor.  The responsibilities and compensation of the Managing Member is described in section III D of this Disclosure Statement.

### D.    Events Leading to Chapter 11 Filing

This Debtor finds itself in chapter 11 again due to the legal impossibility of complying with the confirmed plan in case no. 10-12679, and residual impact of the drastic economic conditions lingering since the last economic depression. Debtor has accommodated those tenants who were able to pay something, and replaced those tenants who are not able to pay at all for an extended period. Prior to assented dismissal of chapter 11 case no. 12-12958, in which Debtor believed the creditor Bayview was in agreement with a short sale or forbearance plan, but at the same time moved forward with a foreclosure notice.

### E.    Significant Events During the Bankruptcy Case

The Secured Creditor, Bayview Loan Servicing, LLC., had offered to accept a short sale at $680,000 if closed prior to the foreclosure date of October 3, 2013.  Debtor has a buyer for $680,000 cash, but the buyer is unable to close on or before October 3, 2013 resulting in this filing.

### F.    Projected Recovery of Avoidable Transfers

The Debtor has completed its investigation with regard to pre-petition transactions.  There were no payments or transfers by Debtor within 90 days of the bankruptcy filing to any third party.  There were no payments or transfers by Debtor within 1 year of the bankruptcy filing to any insider or related party.  If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

### G.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H.    Current and Historical Financial Conditions

Prior to and during the case, Debtor was unable to collect all rents due the economic circumstances of the tenants. Some of the commercial rents were temporarily reduced to allow those tenants to survive and regroup so that the full rents could be collected upon the effective date of the plan.  The residential tenants had great difficulty paying the full rents. Reductions were allowed for those facing temporary issues.  Replacement was the only option for those who faced permanent issues.  An accident occurred in April 2013 that hampered the remittance process.  The repairs have all been made and the property affected, the convenience store, is fully occupied.

Debtor has been operating since 2003 as property manager of the realty located at 187 Webster Street, Hudson, NH.  Currently, the property has multiple uses based upon it: A convenience store, a landscaping contractor business and related storage areas, 8 storage units & 3 residential units. A couple of the storage units are vacant.

### III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.    Class 1 Claims – Administrative, Priority, nominal**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has not placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Super-priority for the costs to plan, apply for approval & market the condo units after the effective date of the Plan. | $0.00 | Paid after the effective date of the Plan, out of proceeds of sale of condo units in amount pro rata to the portion that the first mortgage creditor would be entitled to for each sale. |
| Professional Fees, as approved by the Court. | $10,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |
| Nominal claims (those not exceeding $500) | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $975.00 | Paid in full on the effective date of the Plan |
| TOTAL | $10,975.00 | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount | Date of Assessment | Treatment |
|---|---|---|---|

4

| | Owed | | |
|---|---|---|---|
| **Town of Hudson– Property taxes** | CURRENT | 2013- 2nd half | Paid by Debtor in the future. |
| | | | |

### C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured pre-petition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment | |
|---|---|---|---|---|---|
| 2 | *Secure claim of:*<br>Name = **Bayview Loan Servicing, LLC**<br><br>Collateral Description = **realty at 187 Webster, Hudson NH**<br><br>Allowed Secured Amount = $**1,300,000**<br><br>Priority of lien = **100% secured- 1st position**<br><br>Principal owed =$**1,300,000**<br><br>Pre-pet. arrearage =$**0.00**<br><br>Total claim =$**1,300,000** | No | Yes<br>Amortization:<br>FMV: $680K<br>% rate: 2%<br>Period: 20 yrs<br><br>Years 1 & 2 will be interest only at $2,600/month<br><br>Years 3-5 will be P&I at $3,440/month | Monthly payment<br>Yrs 1-2 % only<br>Yrs 3-5 P&I<br><br>Pmts Begin<br><br>Pmts End<br><br>Balloon pmts made at end of plan<br><br><br>Interest rate %<br>Amortization period<br><br>Treatment of Lien<br><br>Int portion of each payment | = **$2,600.00**<br>= **$3,440.00**<br><br>= **10/10/2013**<br><br>= **10/1/2018**<br><br>= **Short sale to be completed before end of 5 yr plan.**<br><br>= **2.0%**<br>= **20 years**<br><br>= **remains secure**<br><br>= **$2,600.00** |

| Class # | Description | Impairment | Treatment | |
|---|---|---|---|---|
| 3 | *Secure claim of:*<br>Name = **Bayview Loan Servicing, LLC**<br><br>Collateral Description = **realty at 187 Webster, Hudson NH**<br><br>Allowed Secured Amount = $**150,000**<br><br>Priority of lien = **2nd position- secured** | Yes | Monthly payment<br><br>Balloon Pmts made at end of plan.<br><br>Interest rate %<br><br>Treatment of Lien | = **$100.00**<br><br><br><br>= **0.00%**<br><br>= **2nd position "secured"** |

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | Principal owed = $**150,000**  Pre-pet. arrearage = $**0.00**  Total secured claim = $150,000 | | |

  2. *Classes of Priority Secured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment. The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan: **NONE**

  3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 4, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | General Unsecured Class  Maynard & Paquette $240,000  Prunier & Prolman $5,000  Saco Construction $10,000.00  Town of Hudson sewer liens $1,200.00  Total Claims in Class 4: **$256,200** | Impaired | Monthly amount    = $426.66  To be paid monthly  Interest included in payment  = **0.00%**  estimated percent of claims paid via plan payments  (total =$25,620)    **= 10%** |

  4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | Equity interest holders:  Vatche Manoukian 90%  Linda Haytayan 10% | Impaired | Equity holders will receive no compensation during the term of the plan. |

    **D.**    **Means of Implementing the Plan**

        1.    *Source of Payments*

Payments and distributions under the Plan will be funded by the following: Beginning on October 10, 2013 and for the first two years of the plan, the debtor will pay $2,600.00 per month to the Secured Creditor, Bayview Loan Servicing, LLC for the first mortgage, and $100.00 per month for the second mortgage, from collected rents.  During years 3-5 of the plan, the payment on the first mortgage shall be $3,440.00 per month to Bayview.  All payments to the creditor will be made by the 10th of each month according to the schedule listed in the Plan.  The property taxes will be paid by the debtor.  Insurance & CAM will be paid by the Debtor from rents collected.

        2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Vatche Manoukian | Managing Member | Yes | Managing Member | None |
| Linda Haytayan | Member | Yes | Member | None |

    **E.**    **Risk Factors**

The proposed Plan has the following risks:

Particularly in today's economic depression, the success of the plan is dependent on rental payments from tenants and significant rebound in the sales of existing units.

Opponents of the Plan are very pessimistic about the future prospects of the real estate market.  Debtor shares their pessimism, but will be making these mortgages productive until the market rebounds and other options are available.

    **F.**    **Executory Contracts and Unexpired Leases**

All executory contracts and unexpired leases that are not listed in the Plan at Article VI will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

    **G.**    **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The Debtor has no reasonable way to predict any anticipated tax consequences of the Plan to the Debtor, or any creditors pertaining to or of any discharge, or the general tax consequences of receipt of plan consideration after confirmation.

**IV.**    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

    **A.**    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes **2, 3, 4 & 5** are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that class **1** is unimpaired and that holders of claims in class 1, therefore, do not have the right to vote to accept or reject the Plan.

       1.      *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case has passed.***

       2.      *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

       3.      *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

    holders of claims and equity interests that have been disallowed by an order of the Court;

    holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

    holders of claims or equity interests in unimpaired classes;

    holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

    holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

    administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

       4.      *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    **B.**    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.***

C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit D.

D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date, in particular Class 1.  This will come from additional member contributions.  Presently, Debtor has the sum of $2,600 on hand, and will make the plan payments due to classes 2, 3 & 4 on the 10th of October 2013, according to the terms of the plan and as approved by the Court.  The same will be done for each month thereafter for a total of 60 months.

2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit Rental Income & Expense Projections.

The Plan Proponent's financial projections show that the rents will be sufficient to pay the Secured Creditor interest only for the term of the plan, with a payoff via short sale at or before the end of the plan.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V. **EFFECT OF CONFIRMATION OF PLAN**

A. **DISCHARGE OF DEBTOR**

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

B. **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C. **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

VI. **OTHER PLAN PROVISIONS**

None

/s/ Vatche Manoukian
**Vatche Manoukian, Managing Member of**
**Derry & Webster, LLC**
Plan Proponent

/s/ Robert L. O'Brien
**Robert L. O'Brien 15358**
**Attorney at Law**
**P.O. Box 357**
**New Boston NH 03070**
**603-459-9965**
**603-250-0822 Fax**
robjd@mail2firm.com
Attorney for the Plan Proponent

## EXHIBITS

Exhibit A  Appraisal

Exhibit B – Cash Report

Exhibit C – Rent Rolls

Exhibit D – Liquidation Summary

Exhibit E -  Projections

Exhibit F – Ballots cast by creditors of the General Unsecured Class

Exhibit G – Ballot Form